## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**CHRISTINE W. MCENTEE,**                  )
                                          )
                  **Plaintiff,**           )
                                          )
**v.**                                     )          **C.A. No. 1:06CV01813(JR)**
                                          )
**AMERICAN COLLEGE OF**                    )
**CARDIOLOGY, INC.,** *et al.*             )
                                          )
                  **Defendants.**          )
_____)

### DEFENDANTS' ANSWER AND COUNTERCLAIM

Defendants American College of Cardiology, Inc. ("ACC") and American College of Cardiology Foundation ("ACCF") (collectively "Defendants"), by and through their undersigned counsel, hereby file this Answer and Counterclaim to Plaintiff Christine McEntee's ("Plaintiff") Complaint.

### ANSWER

Defendants respond to the numbered paragraphs in the Complaint as follows:

### Preliminary Statement

1.      Defendants admit that Plaintiff has filed a civil Complaint against them purporting to assert claims under the common law of the State of Maryland, the Maryland Wage Payment and Collection Act, and the Montgomery County Human Relations and Civil Liberties Act and that Plaintiff seeks monetary and declaratory relief.  Defendants deny the remaining allegations contained in Paragraph No. 1 of the Complaint.  Defendants further deny that they engaged in the purported wrongdoing that Plaintiff alleges or in any wrongdoing whatsoever.

**Jurisdiction and Venue**

2.      Paragraph No. 2 of the Complaint contains jurisdictional allegations and/or legal conclusions to which no response is required, but to the extent that a response is required, Defendants deny the allegations.

3.      Paragraph No. 3 of the Complaint contains jurisdictional allegations and/or legal conclusions to which no response is required, but to the extent that a response is required, Defendants deny the allegations.

**Parties**

4.      Defendants lack sufficient knowledge to admit or deny whether Plaintiff is a citizen of the Commonwealth of Virginia who resides at 3606 Roberts Lane, Arlington, VA 22207, but to the extent a response is required, Defendants deny the allegation.  Defendants admit that they employed Plaintiff as their Executive Vice President and Chief Executive Officer.  Defendants deny the remaining allegations contained in Paragraph No. 4 of the Complaint.

5.      Defendants admit the allegations contained in the first three sentences of Paragraph No. 5.  Defendants further admit that prior to when ACCF changed its name in 2002, it was known as the American College of Cardiology.  Defendants admit that they employed Plaintiff as their Executive Vice President from approximately May 1998 until approximately 2000 and that they employed Plaintiff as their Chief Executive Officer from approximately 2000 until approximately late November 2005, when Plaintiff effectively resigned her employment. Defendants deny the remaining allegations contained in Paragraph No. 5 of the Complaint.

6.      Defendants admit the allegations contained in the first four sentences of Paragraph No. 6 of the Complaint.  Defendants admit that Plaintiff served as the Executive Vice

President and CEO of ACC from its inception until late November 2005, when Plaintiff effectively resigned her employment.  Defendants deny the remaining allegations contained in Paragraph No. 6 of the Complaint.

7.      Defendants admit the allegations contained in the first two sentences of Paragraph No. 7 of the Complaint.  The last sentence of Paragraph No. 7 of the Complaint requires no response.

## Factual Allegations

8.      Defendants admit the allegations contained in Paragraph No. 8 of the Complaint.

9.      The Employment Agreement speaks for itself.

10.     The Employment Agreement speaks for itself.

11.     The Employment Agreement speaks for itself.  Defendants deny the allegations contained in Paragraph No. 11 of the Complaint.

12.     The Employment Agreement speaks for itself.

13.     The Employment Agreement speaks for itself.

14.     The Employment Agreement speaks for itself.

15.     The Employment Agreement speaks for itself.

16.     Defendants admit the allegations contained in Paragraph No. 16 of the Complaint.

17.     Defendants deny the allegations contained in Paragraph No. 17 of the Complaint.

18.     Defendants admit that Plaintiff was the first female CEO of ACC.

19.     Defendants deny the allegations contained in Paragraph No. 19 of the Complaint.

20.     Defendants lack sufficient knowledge to admit or deny that female Vice Presidents at ACC told Plaintiff about how they counseled new female employees on ways to cope with male leaders who made sexual advances towards them, but to the extent that a

response is required, Defendants deny the allegations. Defendants lack sufficient knowledge to admit or deny the allegation that Plaintiff was subjected to verbal abuse by one of ACC's past male presidents, but to the extent that a response is required, Defendants deny the allegation. Defendants deny the remaining allegations contained in Paragraph No. 20 of the Complaint.

21.    Defendants lack sufficient knowledge to admit or deny when Plaintiff made a decision to terminate Defendants' CFO, but to the extent that a response is required, Defendants deny the allegation. Defendants admit that it was within Plaintiff's sole authority to terminate the CFO. Defendants deny the remaining allegations contained in Paragraph No. 21 of the Complaint.

22.    Defendants admit the allegation contained in Paragraph No. 22 of the Complaint, that Plaintiff made the decision to terminate the CFO. Defendants admit that information had come to light concerning the CFO's performance. Defendants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph No. 22, but to the extent that a response is required, Defendants deny the allegations.

23.    Defendants admit that Plaintiff's decision to terminate the CFO was investigated and reviewed by members of the ACC's Board of Trustees. Defendants deny the remaining allegations contained in Paragraph No. 23 of the Complaint.

24.    Defendants lack sufficient information to admit or deny the allegation contained in Paragraph No. 24, that ACC's Treasurer at the time, Dr. James T. Dove, stated that regardless of what the CEO's contract provided, he believed that ACC's Executive Committee should be consulted and agree with the decisions before personnel actions be taken, but to the extent that a response is required, Defendants deny this allegation. The Employment Agreement speaks for itself. Defendants deny the remaining allegations in Paragraph No. 24.

4

25.    Defendants admit that the ACC Executive Committee requested that ACC President, Dr. Pamela Douglas, participate in the review of Plaintiff's decision to terminate the CFO.  Defendants deny the remaining allegations contained in Paragraph No. 25 of the Complaint.

26.    Defendants admit that in mid-March 2005, an agreement was reached in terms of the CFO's resignation.  Defendants deny the remaining allegations contained in Paragraph No. 26 of the Complaint.

27.    Defendants deny the allegations contained in Paragraph No. 27 of the Complaint.

28.    Defendants deny the allegations contained in Paragraph No. 28 of the Complaint.

29.    Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph No. 29 of the Complaint, but to the extent that a response is required, Defendants deny the allegations.

30.    Defendants admit that Plaintiff sent a memorandum to the ACC Executive Committee dated May 11, 2005.  That memorandum speaks for itself.

31.    Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph No. 31 of the Complaint, but to the extent that a response is required, Defendants deny the allegations.

32.    Defendants admit that there was a meeting concerning governance of the ACC in August 2005.  Defendants deny the remaining allegations contained in Paragraph No. 32 of the Complaint.

33.    Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph No. 33 of the Complaint, but to the extent that a response is required, Defendants deny the allegations.

34.     Defendants admit that a task force on governance was appointed after the August 2005 Board meeting.  Defendants further admit that Mr. Thomas E. Arend, Jr. was appointed to staff the task force.  Defendants deny the remaining allegations contained in Paragraph No. 34 of the Complaint.

35.     Defendants admit that the governance task force created drafts of a document regarding the roles and responsibilities of the ACC President, Executive Committee, Board of Trustees, and CEO.  That document speaks for itself.  Defendants deny the remaining allegations contained in Paragraph No. 35 of the Complaint.

36.     Defendants admit that Plaintiff sent a memorandum to the governance task force dated September 13, 2005.  That memorandum speaks for itself.

37.     Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph No. 37 of the Complaint, but to the extent that a response is required, Defendants deny the allegations.

38.     Defendants deny the allegations contained in Paragraph No. 38 of the Complaint.

39.     Defendants deny the allegations contained in Paragraph No. 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph No. 40 of the Complaint.

41.     Defendants admit that Plaintiff sent a memorandum to the ACC Executive Committee dated November 10, 2005.  That memorandum speaks for itself.

42.     Defendants admit that Plaintiff met with ACC's CFO, Mr. Michael A. Votaw, and Mr. Arend.  Defendants deny the remaining allegations contained in Paragraph No. 42 of the Complaint.

43.     Defendants admit that on or about November 12, 2005, the ACC Executive Committee met to discuss the report of the task force on governance.  Defendants admit that at

this meeting, Plaintiff stated that she was not resigning her employment.  Defendants deny the

remaining allegations contained in Paragraph No. 43 of the Complaint.

44.    Defendants deny the allegations contained in Paragraph No. 44 of the Complaint.

45.    Defendants deny the allegations contained in Paragraph No. 45 of the Complaint.

46.    Defendants lack sufficient information to admit or deny the allegations contained

in Paragraph No. 46 of the Complaint, but to the extent that a response is required, Defendants

deny the allegations.

47.    Defendants deny the allegations contained in Paragraph No. 47 of the Complaint.

48.    Defendants deny the allegations contained in Paragraph No. 48 of the Complaint.

49.    Defendants lack sufficient information to admit or deny the allegations contained

in Paragraph No. 49 of the Complaint, but to the extent that a response is required, Defendants

deny the allegations.

50.    Defendants admit that on or about November 22, 2005, ACC formally approved

the governance report.  That report speaks for itself.  Defendants deny the remaining allegations

contained in Paragraph No. 50 of the Complaint.

51.    Defendants deny that Dr. Douglas informed Plaintiff that she would be terminated

if she failed to accept the new governance arrangement.  Defendants lack sufficient information

to admit or deny the remaining allegations contained in Paragraph No. 51, but to the extent that a

response is required, Defendants deny the allegations.

52.    Defendants admit that Mr. Arend had a conversation with Plaintiff, during which

Mr. Arend told Plaintiff that she had not been terminated.  Defendants deny the allegation

contained in Paragraph No. 52 of the Complaint, that Dr. Douglas threatened Plaintiff.

Defendants deny the remaining allegations contained in Paragraph No. 52.

53.    Defendants admit that Plaintiff was in the office on November 28, 2005. Defendants deny that Plaintiff was intent upon assisting ACC to work out an effective leadership transition.  Defendants lack sufficient information to admit or deny the remaining allegations contained in Paragraph 53 of the Complaint.

54.    Defendants deny the allegations contained in Paragraph No. 54 of the Complaint.

55.    Defendants admit that Plaintiff's counsel sent a letter dated November 28, 2005 to ACC's General Counsel.  That letter speaks for itself.

56.    Defendants admit that they requested that Plaintiff not return to ACC headquarters after November 30, 2005.  Defendants deny the remaining allegations contained in Paragraph No. 56 of the Complaint.

57.    Defendants admit that Counsel for ACC sent a letter to Plaintiff dated November 30, 2005.  That letter speaks for itself.  Defendants deny that the letter made any false accusations.

58.    Defendants deny the allegations contained in Paragraph No. 58 of the Complaint.

59.    Defendants deny the allegations contained in Paragraph No. 59 of the Complaint.

60.    Defendants lack sufficient knowledge to admit or deny the allegations contained in Paragraph No. 60 of the Complaint, but to the extent that a response is required, Defendants deny the allegations.

61.    Defendants deny the allegations contained in Paragraph No. 61 of the Complaint.

62.    Defendants admit the allegation contained in Paragraph No. 62 of the Complaint.

63.    Defendants admit that they received a charge of discrimination dated July 27, 2006. Defendants deny the remaining allegations contained in Paragraph No. 63 of the Complaint.

## Count I:  Breach of Contract

64.    Defendants reallege and incorporate, as though fully set forth herein, their responses to the allegations set forth in Paragraphs Nos. 1 through 63 of the Complaint.

65.    Defendants admit that they entered into an employment agreement with Plaintiff. That agreement speaks for itself.  Defendants deny the remaining allegations contained in Paragraph No. 65 of the Complaint.

66.    Defendants deny the allegations contained in Paragraph No. 66 of the Complaint.

67.    Defendants deny the allegations contained in Paragraph No. 67 of the Complaint.

68.    Defendants deny the allegations contained in Paragraph No. 68 of the Complaint.

69.    Defendants deny the allegations contained in Paragraph No. 69 of the Complaint.

70.    Defendants deny the allegations contained in Paragraph No. 70 of the Complaint.

71.    Defendants deny the allegations contained in Paragraph No. 71 of the Complaint.

72.    Defendants deny that Plaintiff is entitled to the relief that she requests or to any relief whatsoever.  Defendants also deny the remaining allegations contained in Paragraph No. 72 of the Complaint.

## Count II:  Violation of the Maryland Wage Payment and Collection Act

73.    Defendants reallege and incorporate, as though fully set forth herein, their responses to the allegations set forth in Paragraphs Nos. 1 through 72 of the Complaint.

74.    Paragraph No. 74 of the Complaint contains a legal conclusion to which no response is required, but to the extent that a response is required, Defendants deny the allegations.

75.    Defendants deny the allegations contained in Paragraph No. 75 of the Complaint.

76.    Defendants deny the allegations contained in Paragraph No. 76 of the Complaint.

77.    Defendants deny the allegations contained in Paragraph No. 77 of the Complaint.

78.     Defendants deny the allegations contained in Paragraph No. 78 of the Complaint.

79.     Defendants deny that Plaintiff is entitled to the relief that she requests or to any relief whatsoever.  Defendants also deny the remaining allegations contained in Paragraph No. 79 of the Complaint.

80.     Defendants deny the allegations contained in Paragraph No. 80 of the Complaint.

81.     Defendants deny that Plaintiff is entitled to the relief that she requests or to any relief whatsoever.  Defendants also deny the remaining allegations contained in Paragraph No. 81 of the Complaint.

### Count III:  Discrimination and Retaliation in Violation of Montgomery County Code

82.     Defendants reallege and incorporate, as though fully set forth herein, their responses to the allegations set forth in Paragraphs Nos. 1 through 81 of the Complaint.

83.     Paragraph No. 83 of the Complaint contains a legal conclusion to which no response is required, but to the extent that a response is required, Defendants deny the allegations.

84.     Paragraph No. 84 of the Complaint contains a legal conclusion to which no response is required, but to the extent that a response is required, Defendants deny the allegations.

85.     Defendants deny the allegations contained in Paragraph No. 85 of the Complaint.

86.     Paragraph No. 86 of the Complaint contains a legal conclusion to which no response is required, but to the extent that a response is required, Defendants deny the allegations.

87.     Defendants deny the allegations contained in Paragraph No. 87 of the Complaint.

88.     Defendants deny the allegations contained in Paragraph No. 88 of the Complaint.

89.     Defendants deny the allegations contained in Paragraph No. 89 of the Complaint.

90.     Defendants deny the allegations contained in Paragraph No. 90 of the Complaint.

91.     Defendants deny the allegations contained in Paragraph No. 91 of the Complaint.

92.     Defendants deny the allegations contained in Paragraph No. 92 of the Complaint.

## Requested Relief

93.     Defendants deny that Plaintiff is entitled to the relief that she requests or to any relief whatsoever.

## Conclusion

94.     Defendants deny each and every allegation of the Complaint that Defendants have not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Defendants hereby assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrines of waiver, duress, release and/or estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Plaintiff's failure to mitigate her damages, if any.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unjust enrichment.

### EIGTH AFFIRMATIVE DEFENSE

Plaintiff has failed to allege her causes of action with particularity to enable Defendants
to raise all appropriate defenses and therefore, Defendants reserve the right to add additional
defenses as the factual basis for each defense becomes known.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim under the Maryland Wage Payment and Collection Act fails to state a
claim because it does not involve "wages" as they are defined under the Act.

### TENTH AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over the claim raised in Count III of the Complaint under
Article I, Chapter 27 of the Montgomery County Code.

WHEREFORE, having answered, Defendants submit that the Court should dismiss the
Complaint with prejudice, award Defendants their reasonable costs and attorneys' fees and grant
Defendants such further relief as this Court deems just and proper.


### COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants and Counter-
Plaintiffs ACC and ACCF hereby file the instant counterclaim for declaratory relief and a money
judgment against Christine W. McEntee ("McEntee") as follows:

## Parties

1.      ACCF is a non-profit corporation with its principal place of business at 2400 N Street, N.W., Washington, D.C. 20037.  ACCF is a 503(c)(3) organization that, through research, education, and advocacy, attempts to influence healthcare policy.  Prior to changing its name in 2002, ACCF was known as the American College of Cardiology.

2.      ACC is a non-profit corporation with its principal place of business at 2400 N Street, N.W., Washington, D.C. 20037.  ACC is a 501(c)(6) organization dedicated to advocating for quality cardiovascular care through education, research promotion, and the development and application of standards and guidelines, and influencing healthcare policy.  Hereinafter, ACC and ACCF are referred to collectively as "ACC."

3.      Upon information and belief, McEntee is a citizen of the Commonwealth of Virginia who resides at 3606 Roberts Lane, Arlington, Virginia 22207.

## Background

4.      McEntee was hired by ACC in 1998 as its Executive Vice President and subsequently was named CEO.

5.      On July 22, 2003, while McEntee served as the CEO of ACC, she entered into an employment agreement with ACC ("Employment Agreement").

6.      Paragraph three of the Employment Agreement states that "[d]uring the term of employment, [McEntee] shall perform the duties of the Chief Executive Officer in accordance with ACC's bylaws, rules, regulations, policies, and procedures and shall provide competent executive management services for ACC. … [McEntee] shall perform such other executive services and executive duties for ACC and ACCF as may be entrusted to the Employee in

accordance with the bylaws of ACC and ACCF and consistent with the terms of this Agreement. … [McEntee] shall report to and be responsible to the Board of Trustees of ACC and ACCF."

7.      Paragraph one of the Employment Agreement states: "Effective January 1, 2003, Employee hereby binds herself to serve ACC throughout the period covered by this paragraph in the capacity of Chief Executive Officer, and shall exert her energy and time to the prosecution of her duties, and shall promptly and faithfully perform all these duties which pertain to that employment."

8.      Paragraph six of the Employment Agreement provides: "If at any time the Employee wishes to terminate her obligations under this Agreement, she shall give ACC at least four and one-half (4.5) months' advance written notice."

9.      ACC is governed by an elected Board of Trustees, which consists of leading cardiologists from around the United States, and the Executive Committee of the Board, which acts on behalf of the Board when it is not in session and works closely with the College's staff to establish strategic goals and objectives and implement an operational plan for achieving them.

10.     In April 2005, the Executive Committee commenced a process of examining the governance of ACC, appointed a task force, and ultimately the Board adopted a report reaffirming that ACC is a member driven organization and clarifying the respective roles of the governing bodies, President, and CEO.

11.     McEntee was well aware that the Executive Committee believed that ACC should be more member driven and had been drifting away from the core principle of its creation: *i.e.*, to function as a member driven organization.

12.     As the review of ACC's governance proceeded during the Spring of 2005, McEntee supported the examination of governance issues as healthy and important for ACC.  At

that time she acknowledged and accepted the Board's belief that it was in the best interests of ACC for its current and future direction to become more member driven.

13.     Upon information and belief, in the Summer and Fall of 2005, McEntee pursued employment as Executive Vice President and Chief Executive Officer of the American Institute of Architects ("AIA").

14.     While McEntee was interviewing with the AIA, in the Fall of 2005 she changed her attitude concerning the ACC governance changes.  She expressed vehement opposition to the Board's plan to enhance the role of ACC's membership in its governance and declared her determination to resist any attempt to make ACC a more member-driven organization.

15.     McEntee announced that she would not accept the governance changes adopted by the Board.  McEntee became uncooperative and obstructed ACC's ability to meet the important goals of the Board.  McEntee declared that she would refuse to perform her duties and that a leadership change would be required.  McEntee did refuse to perform her duties, effectively resigning from her position.

16.     McEntee did not provide advance notice that she would refuse to perform her duties and effectively resign from her position.

17.     Following McEntee's effective resignation, ACC was forced to operate without a permanent CEO for a significant period.

## COUNT I

### BREACH OF CONTRACT

18.     ACC realleges and incorporates by reference the allegations contained in Paragraphs 1 through 17 as though fully set forth herein.

19.    McEntee and the ACC entered into a valid, binding, and enforceable Employment Agreement on or about July 22, 2003.

20.    Pursuant to paragraph three of the Employment Agreement, McEntee was obligated to "perform the duties of the Chief Executive Officer in accordance with ACC's bylaws, rules, regulations, policies, and procedures and shall provide competent executive management services for ACC."  In addition, McEntee was required to perform "such other executive services and executive duties for ACC and ACCF as may be entrusted to the Employee in accordance with the bylaws of ACC and ACCF and consistent with the terms of this Agreement."

21.    McEntee materially breached the Employment Agreement by refusing to perform her duties as described in the Employment Agreement.

22.    Paragraph six of the Employment Agreement provides: "If at any time the Employee wishes to terminate her obligations under this Agreement, she shall give ACC at least four and one-half (4.5) months' advance written notice."

23.    McEntee materially breached her Employment Agreement by failing to provide the ACC with the contractually required four and one-half months' advance written notice.

24.    McEntee's sudden effective resignation without notice caused ACC to suffer an unexpected void in its leadership.

25.    ACC suffered material damages as a result of McEntee's failure to provide the organization with four and one-half months' written notice of her effective resignation.

26.    McEntee is liable to ACC for her breach of contract, the exact amount to be proven at trial, plus interest thereon.

## COUNT II

## BREACH OF DUTY OF LOYALTY

27.    ACC realleges and incorporates by reference the allegations contained in Paragraphs 1 through 26 as though fully set forth herein.

28.    As a corporate officer McEntee owed a stringent and undivided loyalty to ACC to act solely for the benefit of ACC in all matters and to avoid conflicts of interest between her duty to ACC and her own self-interest.

29.    McEntee was aware that ACC's Board of Directors had established important goals concerning the governance of ACC.

30.    Although McEntee had supported the Board's goals in the Spring of 2005, in the months immediately preceding her effective resignation, McEntee became uncooperative and obstructed ACC's ability to meet the important goals of the Board.

31.    Upon information and belief, McEntee decided to resign from ACC to accept a position with AIA.  In order to procure her own termination without cause, McEntee became uncooperative and obstructive in pursuit of a self-interested scheme to receive lucrative separation payments from ACC.  In pursuit of her scheme, McEntee refused to perform her duties.  McEntee's scheme to promote her self interest over the interests of ACC breached her duty of loyalty.  McEntee failed to faithfully pursue the interests of ACC and its nonprofit purpose rather than her own financial interest.

32.    In so breaching the duty of loyalty, McEntee caused ACC to suffer substantial economic damages.

33.    McEntee is liable to the ACC for her breach of the duty of loyalty, the exact amount to be proven at trial, plus interest thereon.

17

## Requested Relief

WHEREFORE, ACC prays this Court for the following relief:

1.      Enter a judgment in favor of ACC and against McEntee for breach of contract in an amount to be proven at trial;

2.      Enter a judgment in favor of ACC and against McEntee for McEntee's breach of the duty of loyalty in an amount to be proven at trial;

3.      Order McEntee to pay pre and post judgment interest;

4.      Order McEntee to pay ACC's reasonable attorneys' fees and costs; and

5.      Award ACC such other and further relief as may be appropriate.


Respectfully submitted,

ARENT FOX PLLC


By:     ____/s/ Savalle C. Sims_____
        Stewart S. Manela, D.C. Bar # 948679
        Savalle C. Sims, D.C. Bar # 457469
        1050 Connecticut Avenue, N.W.
        Washington, D.C. 20036-5339
        (202) 857-6000/Telephone
        (202) 857-6395/Facsimile

        *Counsel for Defendants/Counter-Plaintiffs*

Date:  December 20, 2006